[J-50-2022] [MO: Todd, C.J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| JASMINE WEEKS, ARNELL HOWARD, PATRICIA SHALLICK, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : : : : : | No. 22 EAP 2021 Appeal from the order of the Commonwealth Court dated May 13, 2021 at No. 409 MD 2019. |
| Appellants | : : | ARGUED: September 14, 2022 |
| v. | : : : | |
| DEPARTMENT OF HUMAN SERVICES OF THE COMMONWEALTH OF PENNSYLVANIA, | : : : : : | |
| Appellee | : | |

## CONCURRING OPINION

**JUSTICE DOUGHERTY**                                        **DECIDED: September 28, 2023**

I join the majority opinion in full. I write separately to briefly elaborate about Act 12's new provision allowing the municipality to use funds generated by the Philadelphia Hospital Assessment for "public health programs," and how it fits within the broad unifying subject articulated by the majority: "benefits pertaining to the basic necessities of life to low-income individuals." Majority Opinion at 29. I agree with Justice Donohue that the mere assertion these are "ancillary benefits to the populous at large" does not establish this provision fits within the unifying subject. Dissenting Opinion at 7 (Donohue, J.), *quoting* Majority Opinion at 30. But I believe the amendment fits within the unifying subject because despite Act 12's broad "public health programs" language, the

authorization provision for the Philadelphia Hospital Assessment requires narrower uses of the funds generated.

Article VIII-E of the Human Services Code includes the provisions regarding High Volume Medicaid Hospital Assessments (*i.e.*, the Philadelphia Hospital Assessment), and its authorization provision in Section 802-E provides:

> (a) General rule.--In order to generate additional revenues **for the purpose of assuring that medical assistance recipients have access to** hospital and **other health care services**, and subject to the conditions and requirements specified under this article, a municipality may, by ordinance, impose an assessment on the following:
>
> (1) Each general acute care hospital.
>
> (2) Each high volume Medicaid hospital.

62 P.S. §802-E(a) (emphasis added).  Importantly, Section 802-E does not distinguish between who is using the revenues generated by the hospital assessments.  Also of note, the General Assembly added the "and other health care services" language through Act 12.  *See* Act of June 28, 2019, P.L. 43, No. 12, §6 (as amended 62 P.S. §802-E).[1]

Before Act 12, the municipality could retain funds only to reimburse the administration costs for the assessment and to fund a portion of costs for operating public health clinics; the rest was to be remitted to the Commonwealth to use for the purposes stated in Section 802-E.  *See id.* at 11-12 (amending 62 P.S. §804-E).  After Act 12, the municipality can now also use retained funds for "public health programs."  *Id.* at 12.  But because Section 802-E authorizes the municipality to impose the assessments to generate revenue only for the purposes specified, the funds generated by the Philadelphia Hospital Assessment must be used "for the purpose of assuring that medical

---

[1] Prior to Act 12, Section 802-E more specifically authorized the assessment "for the purpose of assuring that medical assistance recipients have access to hospital services **and that all citizens have access to emergency department services**[.]"  62 P.S. §802-E (2013) (amended 2019) (emphasis added).  Act 12 deleted the bolded language in favor of the broader "and other health care services" text in the current version of Section 802-E.  Act of June 28, 2019, P.L. 43, No. 12, §6 (as amended 62 P.S. §802-E).

assistance recipients have access to hospital and other health care services" regardless of who is spending those funds. Thus, the "public health programs" that Act 12 references must be programs that assure medical assistance recipients have access to health care services. In my view, "public health programs" that "assur[e] that medical assistance recipients have access to hospital and other health care services," 62 P.S. §802-E(a), squarely fit within the unifying subject of "benefits pertaining to the basic necessities of life to low-income individuals."[2] Majority Opinion at 29. I therefore join the majority's holding that Act 12 complies with Article III, Section 3.

As a final observation, I repeat our remark that "our Court is loath[] to substitute our judgment for that of the legislative branch under the pretense of determining whether an unconstitutional change in purpose of a piece of legislation has occurred during the course of its enactment." *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 877 A.2d 383, 409 (Pa. 2005). It may well be that Act 12 has robbed Peter of his cash assistance to pay Paul, leaving some of our most vulnerable Pennsylvanians without the benefits on which they relied. But it is the General Assembly's prerogative to make such a harsh policy choice. Despite the nature of any bill that comes before this Court for review under Article III, we must, as always, maintain neutrality and faithfully apply the text of our Constitution. While deeply cognizant of the struggles of those who previously received cash assistance, I find the legislative process behind Act 12 met the demands of Article III.

---

[2] To the extent those funds are not actually used for that purpose, litigants could challenge the municipality's use of funds as violating Section 802-E, but that would be distinct from a single subject challenge under Article III.